Receipt number AUSFCC-6333268

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| 1. | Charles J. Adams | |
| 2. | Lesley B. Adams | |
| 3. | DeAnna D. Anderson | Case No.   **20-909 C** |
| 4. | James D. Anderson | (Judge _____) |
| 5. | Travis C. Baker | |
| 6. | Jennifer R. Barnes | |
| 7. | Michael A. Becknell | |
| 8. | Shenica F. Bingham | |
| 9. | Fredric D. Boling | |
| 10. | David K. Brian | |
| 11. | Cletis R. Brown Jr. | |
| 12. | Heather L. Brown | |
| 13. | Jamie L. Brown | |
| 14. | Tony W. Buttry-Pennigton | |
| 15. | William L. Caise | |
| 16. | Andre K. Cawood | |
| 17. | Tracy K. Chaney | |
| 18. | James M. Click | |
| 19. | Ricky S. Cline | |
| 20. | Bonarges Cohen | |
| 21. | Crystal G. Collins | |
| 22. | Malissa Contreras | |
| 23. | Timothy N. Croxton | |
| 24. | Damien J. Crump | |
| 25. | Jason W. Cser | |
| 26. | Shawn H. Curtsinger | |

27. Christopher R. Deaton

28. Derrick D. Dezarn

29. Jodi M. Dize

30. Charles A. Douglas

31. Chad W. Egbert

32. Charles L. Finley

33. Timothy R. Finney

34. LaChanda L. Fisher

35. Adam M. Fitzpatrick

36. Keith A. Frazer

37. James T. Frisby

38. Brent E. Fronczak

39. Jeremy P. Gaertner

40. Samantha M. Gahan

41. William D. Gardner

42. Deborah L. Gill

43. Robin Goode

44. Frank P. Gregor II

45. Kameran L. Griffin

46. Cristina A. Hackbarth

47. Candice L. Hall

48. Jeff W. Hamilton

49. James E. Harper

50. Lauren E. Harrison

51. Brandon L. Hawkins

52. Jennifer R. Hawkins

53. Kelly R. Herring

54. Robert J. Heselton

55. Leon Hines

56. Thomas E. Hollan

57. Betty J. Hoskins

58. Thomas J. Howard

59. Wesley G. Howard

60. Alan W. Howe

61. Jacob S. Ison

62. Marcella C. Ison

63. Eric Jackson

64. Marion E. Jackson

65. Keith A. Kemp

66. Anthony D. Labauve

67. Frank A. Marrs

68. Polly Marrs

69. Jonathan E. Massey

70. Seth L. McBurney

71. Ketan Merchant

72. Arika N. Moats

73. Ronald J. Morgan

74. Phillip L. Mullins

75. Emily S. Mullins-Tomlin

76. Nicholas D. Napier

77. Angela M. Newton

78. Kyle J. Ouimette

79. Timothy J. Paddon

80. Cody M. Patton

81. Amy S. Powell

82. Mary T. Prater

83. Chad A. Privett

84. Colette G. Profitt

85. Christopher A. Pustelnik

86. Gene A. Rayburn

87. David F. Ruggles

88. Donald R. Short

89. Heather M. Simmons

90. Jennifer S. Singleton

91. Elbert W. Sizemore

92. Jared W. Sizemore

93. Daniel D. Smith

94. Jonathan A. Stanley

95. Heather F. Summers

96. Shane R. Sword

97. Melissa K. Tackett

98. Shane J. Taylor

99. Jeremy W. Thompson

100. William W. Thompson

101. Kelly L. Tolson

102. Shonna N. Trexler

103. Samantha B. Underwood

104. Richard L. Vanhoose

105. Steven S. Wascher

106. William G. Weaver

107. Kevin A. WHallen

108.   Jared M. White

109.   Christopher A. Wiggins

110.   Barry M. Williams

111.   John P. Williams

112.   Victoria M. Williams

113.   Chrystal D. Yates

114.   Cristen M. Young

115.   Justin D. Young


     Plaintiffs,

     v.

THE UNITED STATES

     Defendant.

## COMPLAINT

1.  The plaintiffs are current and former employees employed by the defendant United States Government at the U.S. Department of Justice, Bureau of Prisons, at the Federal Medical Center ("FMC") Lexington in Lexington, Kentucky (hereinafter "FMC Lexington" or "Institution").  Plaintiffs bring this action for a declaratory judgment, damages and other relief, pursuant to 29 U.S.C. § 216(b), 29 U.S.C. § 1331, 28 U.S.C. § 1346(a)(2), 28 U.S.C. Sections 2201, 2202 and 1491, 28 U.S.C. § 1491, 5 U.S.C. § 5545(d), 5 U.S.C. § 5343(c)(4), 5 U.S.C. § 701 *et seq*., 5 U.S.C. §5596 (the Back Pay Act), and the overtime provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207, to remedy the defendant's willful and unlawful violations of law complained of herein.

## JURISDICTION AND VENUE

5

2.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §1346(a)(2), 28 U.S.C. § 1491, 28 U.S.C. § 1331, 29 U.S.C. § 216(b), 5 U.S.C. § 5545(d), 5 U.S.C. § 5343(c)(4), 5 U.S.C. §5596 and 28 U.S.C. §2501.  Venue is proper pursuant to 28 U.S.C. § 1402.

<u>PARTIES</u>

3.  Plaintiff Charles Adams is a resident of Danville, Kentucky and is currently employed by the defendant United States of America pursuant to Title 5 of the U.S. Code. He is currently employed as a GS-10 nurse at FMC Lexington. At various times within the last six years, plaintiff Adams has been required to perform duties involving unusual physical hardship and hazards within the meaning of 5 U.S.C. §5545(d).

4.  Plaintiff James Harper is a resident of Lexington, Kentucky and is currently employed by the defendant United States of America pursuant to Title 5 of the United States Code. He is currently employed as a Wage Grade, WS 8 Step 5 position at FMC Lexington.  At various times within the last six years, plaintiff Harper has been required to perform duties involving unusually severe working conditions or unusually severe hazards within the meaning of 5 U.S.C. § 5343(c)(4).

5.  The additional persons who are plaintiffs in this action also are or were employees of the defendant at FMC Lexington.  Within the last six years, each of the additional plaintiffs has been required to perform duties involving unusual physical hardship and hazards within the meaning of 5 U.S.C. §5545(d) and/or has been required to perform duties involving unusually severe working conditions or unusually severe hazards within the meaning of 5 U.S.C. § 5343(c)(4).

6.  Each of the plaintiffs in this action is, or has been, an "employee" within the meaning of Title 5 of the U.S. Code, specifically 5 U.S.C. §§ 2105, 5102, and 5342, and within the meaning of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 203(e)(1).

7.  Each of the plaintiffs is a current or former correctional worker employed by the

United States Department of Justice, Bureau of Prisons, at FMC Lexington in Lexington, Kentucky. They have given their written consent to be party plaintiffs in this action pursuant to 29 U.S.C. § 216(b). The consent to sue forms are attached as Exhibit A. These written consent forms set forth each plaintiff's name and home address.

8.   The defendant, United States, is and at all material times has been, an employer under Title 5 of the U.S. Code, specifically 5 U.S.C. §§ 5102 and 5541. The defendant Government of the United States is, and at all material times has been, a "public agency" and "employer" within the meaning of the FLSA, 29 U.S.C. § 203(x) and § 203(d).  Defendant employs, or has employed, the plaintiffs and other employees in similar activities and has its principal place of business in Washington, D.C.

<u>FACTS</u>

9.   At all times material herein, plaintiffs have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. § 201 *et seq*.

10. At all times material herein, plaintiffs have worked in excess of the hourly levels specified in the FLSA, 29 U.S.C. § 207.  As a result, at all times material herein, plaintiffs have been entitled to overtime compensation at a rate of not less than one and one-half times their regular rate of pay for the hours of overtime they have worked.

11. FMC Lexington is an administrative security federal medical center with an adjacent minimum security satellite camp that houses more than 1,200 criminals convicted of federal crimes, including violent offenders, drug dealers, rapists, murderers, and gang members.

12. 5 U.S.C. § 5545(d) provides that the United States Office of Personnel Management ("OPM") shall establish a schedule of pay differentials for duty involving unusual physical hardship or hazard. Pursuant to 5 U.S.C. § 5545(d), OPM has issued regulations at 5 C.F.R. §§550.901-550.907, which establish a schedule of hazardous duty pay differentials and provide that an employee who qualifies for hazardous duty pay shall be paid the hazardous duty

7

pay differential for each day that the employee is exposed to hazardous duty.

13. The schedule of hazardous duty pay differentials set forth in Appendix A to subpart I of Part 550 of Title 5, Code of Federal Regulations, provides that agencies shall pay a twenty five percent (25%) hazard pay differential when employees perform work with or in close proximity to "virulent biologicals," which are defined as "materials of micro-organic nature which when introduced into the body are likely to cause serious disease or fatality and for which protective devices do not afford complete protection." 5 C.F.R. § Pt. 550, Subpt. I, App. A.

14. Pursuant to 5 U.S.C. § 5343(c)(4), OPM has issued regulations for prevailing rate employees which provide for environmental pay differentials for duty involving unusually severe working conditions or unusually severe hazards. *See* 5 C.F.R. § 532.511.

15. The schedule of environmental differentials set forth in Appendix A to subpart E of Part 532 of Title 5, Code of Federal Regulations, provides that agencies shall pay an eight percent (8%) environmental differential when employees perform work with or in close proximity to "micro-organisms which involves potential personal injury such as death, or temporary, partial, or complete loss of faculties or ability to work due to acute, prolonged, or chronic disease" where "the use of safety devices and equipment, medical prophylactic procedures such as vaccines and antiserims and other safety measures do not exist or have been developed but have not practically eliminated the potential for such personal injury" and a four percent (4%) environmental differential when employees perform work with or in close proximity to "micro-organisms in situations for which the nature of the work does not require the individual to be in direct contact with primary containers of organisms pathogenic for man" where "the use of safety devices and equipment and other safety measures have not practically eliminated the potential for personal injury" and 5 C.F.R. § Pt. 532, Subpt. E, App. A.

16. Within the past six years, continuing and ongoing, Plaintiffs have performed work with or in close proximity to objects, surfaces, and/or individuals infected with the novel

coronavirus ("COVID-19").

17. To date, more than 280 employees and inmates of FMC Lexington have been confirmed to be infected with COVID-19 and there have been at least six inmate Covid-19 deaths.

18. COVID-19 is a virus which when introduced into the body is likely to cause serious disease or fatality. The Centers for Disease Control and Prevention ("CDC") has determined that COVID-19 meets the definition for "severe acute respiratory syndromes" as set forth in Executive Order 13295, as amended by Executive Orders 13375 and 13674, and, therefore, is a "quarantinable communicable disease." *See* Attachment to OPM Memorandum No. 2020-05, *Coronavirus Disease 2019 (COVID-19): Additional Guidance* (March 7, 2020). COVID-19 can cause symptoms ranging from mild illness to severe illness and death. *See* Centers for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19), Symptoms of Coronavirus, available at: https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html (last visited July 23, 2020).

19. More than 618,017 people worldwide, including more than 141,677 in the United States, have died from COVID-19. *See* https://www.who.int/emergencies/diseases/novel-coronavirus-2019 (July 23,2020); CDC Coronavirus Cases in the U.S., available at: https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited July 23, 2020).

20. COVID-19 spreads "easily between people" and has been characterized as a pandemic by the World Health Organization ("WHO"). *See* Centers for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19), How COVID-19 Spreads, available at: https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html (last visited June 26, 2020).

21. COVID-19 can be spread by touching infected objects or surfaces and by

breathing in areas where an infected person has coughed or exhaled. As the World Health

Organization explained, "The disease spreads primarily from person to person through small

droplets from the nose or mouth, which are expelled when a person with COVID-19 coughs,

sneezes, or speaks. ... These droplets can land on objects and surfaces around the person such as

tables, doorknobs and handrails." World Health Organization, Q&A on coronaviruses (COVID-

19) (April 17, 2020), available at: https://www.who.int/news-room/q-a-detail/q-a-coronaviruses

(last visited June 26, 2020).

22. According to the World Health Organization, COVID-19 can persist on surfaces

for up to three days. World Health Organization, Q&A on coronaviruses (COVID-19) (April 17,

2020), available at: https://www.who.int/news-room/q-a-detail/q-a-coronaviruses (last visited

June 26, 2020). Accordingly, contact with an infected object or surface may present a risk of

transmission for days from the time the object or surface became infected.

23. A person who is infected with COVID-19 may not present symptoms immediately.

Rather, there is an "incubation period" in which a person is infected but has not begun to present

symptoms. According to the World Health Organization, "[t]he time between exposure to

COVID-19 and the moment when symptoms start is commonly around five to six days but can

range from 1–14 days." World Health Organization, Q&A on coronaviruses (COVID-19) (April

17, 2020), available at: https://www.who.int/news-room/q-a-detail/q-a-coronaviruses (last visited

June 26, 2020).

24. An infected individual may spread COVID-19 before he or she begins to present

significant symptoms. As the World Health Organization has explained, "[m]any people with

COVID-19 experience only mild symptoms. This is particularly true in the early stages of the

disease. It is possible to catch COVID-19 from someone who has just a mild cough and does not

feel ill. Some reports have indicated that people with no symptoms can transmit the virus."

World Health Organization, Q&A on coronaviruses (COVID-19) (April 17, 2020), available at:

10

https://www.who.int/news-room/q-a-detail/q-a-coronaviruses (last visited June 26, 2020).

25. Within the past six years, through the present and continuing and ongoing, plaintiffs and others similarly situated have performed work with or in close proximity to objects, surfaces, and/or individuals infected with COVID-19 without sufficient protective devices.

26. Exposure to objects, surfaces, and/or individuals infected with COVID-19 was not taken into account in the classification of plaintiffs' positions.

27.  Defendant has not provided sufficient protective equipment nor measures to practically eliminate the hazard of exposure to COVID-19 at FMC Lexington.

28. As a result of plaintiffs' performance of their official duties in close proximity to objects, surfaces, and/or individuals infected with COVID-19, the plaintiffs have been exposed to "virulent biologicals" within the meaning of subpart I of Part 550 of Title 5, Code of Federal Regulations and hazardous micro-organisms within the meaning of subpart E of Part 532 of Title 5, Code of Federal Regulations.

29. Defendant has not compensated plaintiffs with hazardous duty pay differential for exposure to virulent biologicals as set forth in Appendix A to subpart I of Part 550 of Title 5, Code of Federal Regulations or the environmental differential for exposure to hazardous microorganisms set forth in Appendix A to subpart E of Part 532 of Title 5, Code of Federal Regulations.

30. Accordingly, defendant has failed to provide hazardous duty and environmental differential pay to the plaintiffs when they work with or in close proximity to objects, surfaces, and/or individuals infected with COVID-19 as required by 5 U.S.C. § 5545(d) and 5 U.S.C. § 5343(c)(4).

31.  Because defendant has failed to pay the plaintiffs hazardous duty pay and environmental differentials, defendant has not included such pay when calculating the plaintiffs'

11

regular rates of pay for purposes of paying overtime under the FLSA.

CLAIMS

**COUNT ONE – Hazardous Duty Pay**

32. Plaintiffs re-allege and incorporate by reference herein, paragraphs 1 through and including paragraph 31 of this Complaint.

33.  Section 5545(d) of Title 5 of the U.S. Code provides that the United States Office of Personnel Management (OPM) shall establish a schedule of pay differentials for duty by federal employees involving unusual physical hardship or hazard.  Section 5545(d) further provides that OPM prescribe "such minimum periods as it determines appropriate" during which an employee who performs duty involving physical hardship or hazard is entitled to hazardous duty pay.

34.  Pursuant to Section 5545(d) of Title 5, OPM has issued regulations at 5 C.F.R. §§550.901-550.907 pertaining to hazardous duty pay. These regulations establish a schedule of hazardous pay differentials and provide, *inter alia*, that an employee who qualifies for hazardous duty pay shall be paid hazardous duty pay for each day that the employee is exposed to hazardous duty or physical hardship.

35.  The schedule of hazardous duty pay differentials that OPM has established in regulations 5 C.F.R. §§550.901-.907 provides that agencies shall pay hazardous duty pay to employees who are exposed to virulent biologicals, such as COVID-19, to which the plaintiffs have been exposed.  They further provide that the hazardous duty pay differential which the agency shall pay the employees equals twenty five percent (25%).

36. During the past six years, through the present and continuing and ongoing, plaintiffs and others similarly situated have performed work in or in close proximity to objects, surfaces, and/or individuals infected with COVID-19 without sufficient protective devices.

37.  Although plaintiffs have been exposed to virulent biologicals during the past six

12

years, defendant has failed and refused, and continues to fail and refuse to pay plaintiffs the twenty five percent (25%) pay differential for each day that the plaintiffs have been required to work in close proximity to COVID-19.  By failing and refusing to pay plaintiffs a twenty five percent (25%) pay differential on these occasions, and continuing to fail and refuse to pay plaintiffs for this hazardous duty, the defendant has violated, and is continuing to violate, the provisions of Title 5 relating to hazardous duty pay at 5 U.S.C. §5545(d).

38.  As a consequence of defendant's failure and refusal to pay the plaintiffs hazardous duty pay at all times material herein, the plaintiffs have been unlawfully deprived of hazardous duty pay and other relief for the maximum statutory period allowed under federal law.

39.  As a result of the defendant's willful and purposeful violations of Title 5, there has become due and owing to each of the plaintiffs various amounts which have not yet been precisely determined.  The employment and work records for each plaintiff are in the exclusive possession, custody and control of defendant and its public agencies and the plaintiffs are unable to state at this time the exact amounts owing to each of them.  Defendant and its public agencies are under a duty imposed by the Government Accounting Office retention schedule, the FLSA (29 U.S.C. §211 (c)) and various statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to plaintiffs and other employees similarly situated from which the amounts of defendant's liability can be ascertained.

40. Pursuant to the Back Pay Act, 5 U.S.C. § 5596, plaintiffs are entitled to recover interest on their back pay damages for the defendant's failure to pay them hazardous duty pay.

41. Plaintiffs are entitled to recover attorneys' fees and costs under, the Back Pay Act, 5 U.S.C. § 5596 as well as other applicable laws and regulations.

**COUNT TWO – Environmental Differential Pay**

42. Plaintiffs re-allege and incorporate by reference herein, paragraphs 1 through and including paragraph 41 of this Complaint.

13

43. Pursuant to 5 U.S.C. § 5343(c)(4), OPM has issued regulations regarding wage schedules and rates for prevailing rate employees which provide for environmental pay differentials for duty involving unusually severe working conditions or unusually severe hazards. *See* 5 C.F.R. § 532.511.

44. The schedule of environmental differentials is contained in Appendix A to subpart E of Part 532 of Title 5, Code of Federal Regulations. *See* 5 C.F.R. § 532.511(d).

45. The schedule of environmental differentials provides that agencies shall pay an eight percent (8%) environmental differential when employees perform work with or in close proximity to "micro-organisms which involves potential personal injury such as death, or temporary, partial, or complete loss of faculties or ability to work due to acute, prolonged, or chronic disease" in situations where "the use of safety devices and equipment, medical prophylactic procedures such as vaccines and antiserims and other safety measures do not exist or have been developed but have not practically eliminated the potential for such personal injury" or a four percent (4%) environmental differential when employees perform work with or in close proximity to "micro-organisms in situations for which the nature of the work does not require the individual to be in direct contact with primary containers of organisms pathogenic for man" where "the use of safety devices and equipment and other safety measures have not practically eliminated the potential for personal injury." 5 C.F.R. § Pt. 532, Subpt. E, App. A.

46. The regulations provide that "[a]n employee entitled to an environmental differential shall be paid an amount equal to the percentage rate authorized by the Office of Personnel Management for the category in which the working condition or hazard falls, multiplied by the rate for the second step of WG–10 for the appropriated fund employees and NA–10 for the nonappropriated fund employees on the current regular non-supervisory wage schedule for the wage area for which the differential is payable, counting one-half cent and over as a whole cent." 5 C.F.R. § 532.511(b)(1).

14

47. An employee entitled to an environmental differential on the basis of hours in a pay status "shall be paid for all hours in a pay status on the day on which he/she is exposed to the situation." 5 C.F.R. § 532.511(b)(3).

48. During the past six years, through the present and continuing and ongoing and continuing to the present, plaintiffs paid pursuant to the prevailing rate pay system and others similarly situated prevailing rate employees have performed work with or in close proximity to objects, surfaces, and/or individuals infected with COVID-19 without sufficient protective devices.

49. Defendant has failed, and continues to fail to pay plaintiffs the eight or four percent environmental differential listed in Appendix A to subpart E of Part 532 of Title 5, Code of Federal Regulations for each period when they have been exposed to COVID-19 through the performance of their official duties.

50. By failing to pay plaintiffs the eight or four percent environmental differential on these occasions, and continuing to fail and refuse to pay plaintiffs for this hazardous duty, the defendant has violated, and is continuing to violate the provisions of 5 U.S.C. § 5343(c)(4).

51. As a consequence of defendant's failure to pay the plaintiffs environmental differential pay, the plaintiffs have been unlawfully deprived of environmental differential pay and other relief.

52. As a result of the defendant's willful and purposeful violations of Title 5, there has become due and owing to each of the plaintiffs various amounts which have not yet been precisely determined. The employment and work records for each plaintiff are in the possession, custody and control of the defendant and the plaintiffs are unable to state at this time the exact amounts owing to each of them. Defendant is under a duty imposed by the Government Accounting Office retention schedule, the FLSA (29 U.S.C. § 211(c)) and various statutory and regulatory provisions to maintain and preserve payroll and other employment records with

respect to plaintiffs and other employees similarly situated from which the amounts of defendant's liability can be ascertained.

53. Pursuant to the Back Pay Act, 5 U.S.C. § 5596, plaintiffs are entitled to recover interest on their back pay damages for the defendant's failure to pay them environmental pay differential.

54. Plaintiffs are entitled to recover attorneys' fees and costs under the Back Pay Act, 5 U.S.C. § 5596 as well as other applicable laws and regulations.

### COUNT 3 – FLSA Regular Rate

55. Plaintiffs incorporate by reference paragraphs 1 through 54 in their entirety and restate them herein.

56. Section 7(a) of the FLSA, 29 U.S.C. § 207(a), provides that overtime shall be paid to employees for work hours in excess of 40 hours in a week at the rate of one and one-half times an employee's "regular rate of pay." In addition, section 551.501 of Part 5 of the Code of Federal Regulations, 5 CFR § 551.501, provides that federal agency employers, such as the Bureau of Prisons, shall compensate their employees at a rate of not less than one and one-half times the employees' regular rate of pay for all hours of work in excess of 8 in a day and/or 40 in a workweek.

57. At all times material herein, during the work weeks in which plaintiffs have worked in excess of 40 hours in a week and/or 8 hours in a day, defendant United States has failed to properly calculate the "regular rate of pay" used to calculate FLSA overtime pay. Defendant has violated the FLSA by failing to include hazardous duty pay and environmental pay differential payments, owed to plaintiffs as set forth in Counts 1 and 2 above, in the regular rate of pay at which FLSA overtime is paid. To be clear, the FLSA claim in this case is limited exclusively to the improper calculation of the regular rate for purposes of paying FLSA overtime caused by the failure of the agency to include hazardous duty and environmental pay differential

16

payments, to which the plaintiffs have been and continue to be entitled as explained in paragraphs 1-54 herein.

58. By failing to properly calculate the regular rate of pay for plaintiffs and other employees similarly situated as required under law, the defendant has violated, and is continuing to violate in a willful and intentional manner, the provisions of the FLSA.  Therefore, at all times material herein, the plaintiffs have been unlawfully deprived of overtime compensation and other relief for the maximum statutory period allowed under federal law.

59. As a result of the defendant's willful and purposeful violations of the FLSA, there have become due and owing to the plaintiffs an amount that has not yet been precisely determined.  The employment and work records for the plaintiffs are in the exclusive possession, custody and control of defendant and its public agencies and the plaintiffs are unable to state at this time the exact amount owing to them.  Defendant and its public agencies are under a duty imposed by the Government Accounting Office retention schedule, the FLSA (29 U.S.C. §211 (c)) and various statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to the plaintiffs and other employees similarly situated from which the amount of defendant's liability can be ascertained.

60. Pursuant to 29 U.S.C. § 216(b), plaintiffs are entitled to recover liquidated damages in an amount equal to their back pay damages for the Defendant's failure to pay overtime compensation.

61.Pursuant to the Back Pay Act, 5 U.S.C. § 5596, plaintiffs are entitled to recover interest on their back pay damages for the defendant's failure to pay them overtime compensation.

62. Plaintiffs are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b), the Back Pay Act, 5 U.S.C. § 5596 as well as other applicable laws and regulations.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, the plaintiffs, on their own behalf and on behalf of others similarly situated, pray that this Court:

(a) Enter judgment declaring that the defendant has willfully and wrongfully violated its statutory obligations, and deprived each of the plaintiffs of their rights;

(b) Order a complete and accurate accounting of all the compensation to which the plaintiffs are entitled;

(c) Award each plaintiff monetary damages, including liquidated damages equal to their unpaid compensation, plus interest;

(d) Award plaintiffs their reasonable attorneys' fees to be paid by the defendant, and the costs and disbursements of this action; and

(e) Grant such other relief as may be just and proper.

Respectfully submitted,

Dated: July 27, 2020

 /s/ David Ricksecker_____
David Ricksecker
MCGILLIVARY STEELE ELKIN LLP
1101 Vermont Avenue, N.W.
Suite 1000
Washington, D.C.  20005
(202) 833-8855

Attorney of Record